## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

MARC-ANTONIE COOPER

Plaintiff,

V.

CASE No

THE CITY OF DELTONA, a Florida
municipality,

Defendant.

_____/

## COMPLAINT

Plaintiff, **MARC-ANTONIE COOPER** (hereinafter, Plaintiff or Dr. Cooper) sues the above captioned Defendant, **THE CITY OF DELTONA, a Florida Municipality,** for discriminatory employment practices and unlawful retaliation in violation of 42 USC Section 1983, and in support thereof, Plaintiff states as follows:

## JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 because Plaintiff's claims involve federal questions under 42 USC Section 1983.

2.      This Court has personal jurisdiction over this action and Defendant CITY OF DELTONA (hereinafter DELTONA or Defendant) because Defendant is permanently and regularly conducting business within Florida and this District and at all times material, DELTONA maintains minimum contacts within this district and should reasonably be expected to be hailed into court in this district.

3.      At all times material to this action, Defendant, Deltona, was Plaintiff's employer and is defined as an Agency pursuant to § 112.3187 Fla. Stat. et. seq.  Accordingly, Deltona is an employer under 42 USC Section 1983 et seq. and subject to its provisions.

4.      Venue is proper to this Court pursuant to 28 U.S.C. 1391(b) because the acts complained of herein took place in Volusia County, FL.

5.      Defendant is an employer with more than 15 employees and is an employer subject to 42 USC §1983.

6.      At all times relevant to this action, Plaintiff worked in this district and was an employee of Defendant.

7.      Plaintiff is an African American of the black race and a protected minority in the United States of America.

## **GENERAL ALLEGATIONS**

8.    Plaintiff was hired as Acting City Manager under the terms of a written employment contract.  The agreement was effective January 28, 2020.  A copy of the agreement is enclosed as <u>Exhibit A</u>.

9.    Soon after taking on this position, DELTONA and Plaintiff's superior and employee of DELTONA, took actions to strip away Plaintiff's authority and undermine his ability to perform his job duties and responsibilities.

10.    On or about November 19th, 2020 DELTONA hired John Peters (hereinafter, Peters) to replace Plaintiff as Acting City Manager after a simple majority vote, although by the city code, charter and rules, a Super Majority was required to replace Plaintiff.

11.    Prior to this vote and prior to Peters being hired, Mayor Herzberg, unsolicited by Plaintiff, approached Plaintiff and asked him essentially, "what do you want financially to leave your employment with the city?"

12.    Plaintiff expressed that he was not interested in resigning from his employment.

13.    Plaintiff started working for Defendant back on August 1, 2018 as the Assistant City Manager.   Due to his extensive education, background and

experience, the previous City Manager Jane Shang on August 13, 2019, requested that Plaintiff serve as the Interim Public Works Director.

14.   Plaintiff directly oversaw the day-to-day operations of the Deltona Water Utility and Public Works Division.

15.   Then on September 27, 2019, Ms. Shang officially changed Plaintiff's job title to "Deputy City Manager/Director of Buildings and Enforcement Services."

16.   Plaintiff was the first African American to serve in this role as Deputy Chief Administrative Officer for DELTONA.

17.   Upon information and belief, DELTONA was being threatened with a lawsuit to be commenced by the West Volusia NAACP for its lack of minority representation in the ranks of Executive Management or middle management.

18.   On January 28, 2020, Plaintiff was appointed unanimously by the City Commission of Deltona to serve as the **Interim City Manager**, after the previous City Manager resigned.

19.   Dr. Cooper was told that while he could apply for the position of City Manager, he was also told by Mayor Herzberg and Commissioner Dana McCool

that no matter how well he was performing as the acting City Manager, he would never be offered the City Manager position.

20.    Plaintiff had reasonable expectation of being hired as City Manager, as evidenced by his written contract.

21.    Under the City Charter, the City Commission can only hire, fire and give direction to Charter Officers, which are the City Manager and the City Attorney.

22.    In the meeting to discuss Plaintiff's appointment and contract held in February 2020, Mayor Herzberg and Commissioner Bradford, made it clear they harbored animosity against Plaintiff for his appointment.

23.    For instance, commissioner Anita Bradford sought to call the Public Works Director, John Peters, to the podium to interview him on the spot for the City Manager position.

24.    Anita Bradford and Mayor Heidi Herzberg knew that Peters was not a better choice to fill the City Manager position, as he had no prior experience or employment history ever serving as a  City Manager, Deputy City Manager, nor as an Executive.

25.    Peters sole experience was that of only a public works director.

26.    Plaintiff was the person who interviewed Peters for the position of Public Works Director, along with the Human Resources Director, at the insistence of the previous City Manager Jane Shang.

27.    Mayor Herzberg, at that meeting made a statement from the dais on video that she could not support Plaintiff's contract if he did not make Peters Deputy City Manager.   Mayor Herzberg claimed she was worried about the "stability" of the City.

28.    However, Mayor Herzberg later withdrew these comments, but only after she was told by another Commissioner, Robert "Bob" McFall, that she was committing malfeasance by attempting to hold hostage Plaintiff's employment agreement in order to force Plaintiff to hire someone.

29.    Although Plaintiff's contract was then voted on and passed unanimously, since that day, Plaintiff was ridiculed, and mercilessly badgered, harassed and attacked by the Mayor with clear racially discriminatory motivations and intentions to either force Plaintiff to resign and/or falsify reasons to seek his termination.

30.    Mayor Herzberg, Commissioner/Vice Mayor Bradford, Commissioner Dana McCool (appointed to replace McFall who resigned), since Planitiff's

employment began, continuously attempted to undermine Plaintiff's authority by contacting staff, namely (John Peters) directly, or via email and giving directions to them.

31.    Plaintiff spoke to each of these individuals about their communications with Peters, and with other directors, in an attempt to reconcile this situation, but these Commissioners communicated with Peters in violation of the City Charter.

32.    Herzberg, Bradford, McCool, and Sosa and City Attorney Skip Fowler, a personal friend of Mr. Peters, all conspired with each other, and with Peters to terminate and remove Plaintiff.

33.    Regardless of the fact that the City was in the process of conducting an alleged Nationwide search for a new City Manager, Plaintiff was told very clearly that although he could apply for the position and should like everyone else, he would not be offered the City Manager position, regardless of how well he was doing as the Acting City Manager.

34.    On November 19, 2020 at 4:30 pm at a Special Commission Meeting called by Mayor Heidi Herzberg at the bequest of Commissioner Dana McCool,

the Commission voted 4-3 (a simple majority) in direct violation of the City Charter to demote Plaintiff.

35.    The initial motion made by the newly appointed Vice Mayor, Anita Bradford, just elected to her second 4-year term as a Commissioner, was actually to immediately fire and terminate Plaintiff's employment, but died due to a lack of a second.

36.    The City Charter states Charter Officers can only be removed by a Super Majority Vote (5-2).

37.    The Charter also states if the vote was not unanimous, the Charter Officer can submit an appeal within 7 days to the mayor, which Plaintiff submitted on Monday, November 23, 2020 and a follow up appeal on Saturday, December 5th, 2020.  Plaintiff never received a response.

38.    The City Attorney in attendance, Mr. Skip Fowler, was supposed to respond to Plaintiff, but never has because he has a personal relationship with John Peters.  Thus, Mr. Fowler is complicit in allowing the charter violation to occur and working with the Acting City Manager and others to suppress the real fact that there exists and there was a collaborative effort of the Mayor and the Vice Mayor, and certain Commissioners who violated the sunshine act, the city charter, and

employment laws to discriminate against Plaintiff due to his race in order remove him without just cause and Due Process rights.

39.     On November 19, 2020, the day of the Special Commission Meeting, Mayor Herzberg came in minutes before the meeting and approached Plaintiff in an illusory effort to distance her from her fellow conspirators, stating to him: that "she could not control this, and the other ladies are doing what they want." Mayor Herzberg then asked Plaintiff essentially how much money he wanted to leave and resign, asserting that because she and her mom liked Plaintiff but that since the City of Deltona is toxic, she felt Plaintiff deserved remuneration.

40.     Plaintiff could see through this charade and facade, and knew very clearly that he was being terminated.  Since the Mayor and Vice Mayor did not have the support to terminate Plaintiff for cause, and because Plaintiff refused to accept the Mayor's attempted payoff above and beyond his contracted severance because she felt Plaintiff "deserved something".

41.     Thereafter, when Plaintiff was demoted, Mr. Peters commenced a campaign of retaliation against Plaintiff including taking actions to continually diminish his position as Deputy City Manager, by micro-managing and scrutinizing units under his direction, and wanted to humiliate and degrade Plaintiff

and other minority employees with the hopes of forcing Plaintiff to quit or eventually finding some basis to then attempt to terminate his employment for cause.

42.   Peters directed Plaintiff to serve as a Customer Service Manager in the Deltona Water Department due to the previous Manager Tamara Aneciaon resigning.

43.   Upon information and belief, Aneciaon resigned due to Peters harassing Aneciaon with racist and racially offensive statements to her.

44.   Upon information and belief, Aneciaon filed a complaint with Deltona Human Resources, and with the EEOC.

45.   Upon information and belief, Defendant, Peters also then hired, with the Commissions approval, a friend of his and Former Chief of Police that was terminated for acts of racial discrimination from his previous employer.

46.   This friend of Peters who the City council approved, was to then take away some of Plaintiff's chief job duties and responsibilities as Deputy City Manager, including overseeing and being in charge of Code Enforcement.

47.   The Acting City Manager, Mr. Peters, who Plaintiff himself interviewed and hired as the Public Works Director in 2019, at the direction of the

then City Manager Jane Shang, is an older white male, who has no previous experience as a City Manager, a Deputy or an Assistant City Manager.  Also, no Commissioner has ever asked for a review of Peter's background, personnel file, or qualifications.

48.    Meanwhile, Plaintiff had zero negative performance evaluations, complaints, nor did he have any disciplinary actions against him which justified his demotion, and then his termination as Acting City Manager.

49.    If the Commission bothered to review they would have seen the opposite of Peters, who had previously been terminated from another city's employment.

50.    On November 20, 2020 Plaintiff took the day off, but at 11:00am, he received a telephone call from the Newly Elected Commissioner, Dana McCool, crying on the phone to tell Plaintiff how much she appreciated him and his work, and how she was hurt by her vote, and she has lost sleep over the vote.

51.    Commissioner McCool further stated that she knows that Plaintiff is in fact qualified and was doing a good job as acting City Manager, but the others in power somehow used her as a means to terminate him.

52.    On November 22, 2020 at 5:06 pm, Plaintiff received a call from Deltona resident Terri Ellis, a black female, who is part of Commissioner Dana McCool's Deltona Strong Organization, who told Plaintiff that "the vote on last Thursday obviously shows that this Commission has no idea what they are doing." She further stated that she knows Plaintiff was qualified for the City Manager position because he was qualified in other cities, much bigger than Deltona, but that she hopes that he stays with the City.

53.    The Commission meetings of November 16th and November 20th clearly demonstrate the fact that several Commissioners, in cooperation with City Attorney Fowler, conspired to replace Plaintiff for no other reason other than his race.  All individuals involved violated the City Charter in actions that they took, never bothering to respond to Plaintiff's appeal, which is prescribed by the charter and Florida law.

54.    The Acting City Manager thereafter continued to engage in retaliatory and discriminatory actions and conduct as a means to humiliate Plaintiff, tarnish his reputation, diminish his authority as the Deputy City Manager, and in efforts to force his resignation.

55.    Mayor Herzberg's own words are also clearly demonstrative of the unlawful discriminatory motivations, as she stated it was "time to clean house", which through the actions taken means a cleaning of the house of minority representation in Executive Management, the Executive Offices and Supervision within the City of Deltona.

56.    Deltona has amongst it commissioners, Loren King, former, if not current, member of the Oath Keepers organization, and anti-government white supremacist group.

57.    King has been a commissioner since 2018.

58.    The Southern Poverty Law Center (SPLC) lists the group's founder Elmer Stewart Rhodes as a known extremist and describes his announced plans to create localized militia units as "frightening".[14] According to the SPLC, the group espouses a number of conspiracy and legal theories associated with the sovereign citizen movement and the white supremacist posse comitatus movement.[15][16][17] SPLC senior fellow Mark Potok describes the group as a whole as "really just an anti-government group who believe in a wild set of conspiracy theories".  See:  https://en.wikipedia.org/wiki/Oath_Keepers.

59.     In 2016, Defendant also was subjected to a lawsuit over alleged racial discrimination by  DIANE DURR.  See MDFL Durr v. City of Deltona, Case No: 6:16-cv-225-Orl-40GJK.

60.     Here, an inadequate and unlawful charade of a vote was commenced to remove Dr. Cooper and terminate his position, and replace him with a White male, with no qualifications for the position...all motivated by dislike of his race and unlawful  discriminatory intentions.

61.     Dr. Cooper was never offered an appeal or hearing on the termination vote, nor did Deltona conduct any investigation into Plaintiff's asserted claim of racial dsicimrination.

62.     Thereafter Plaintiff was subjected to unlawful retaliation for complaining that actions by Deltona officials and commissioners and their employment decisions were racially motivated and discriminatory.

63.     Deltona, by and through its Mayors, commissioners and city attorney, along with Peters, all conspired and were motivated to see to it that Plaintiff resigned or that they could further justify his termination in further discriminatory actions and retaliatory conduct.

64.     Peters took actions to strip away all of Plaintiff's authority, and effectively put up roadblocks and procedures which effectively prevented Plaintiff from performing his job duties as Deputy City Manager.

65.     Peters announced to Plaintiff in February 2021 that Plaintiff was being demoted to the Customer Service MAnager position in the water department, essentially a call center manager position, another adverse employment action taken against him.

66.     Defendant thus constructively discharged and effectively terminated Plaintiff employment as Deputy City Manager in February 2021.

67.  Plaintiff then was forced to resign from his position before he was forced into commencing the role of Customer service Manager, in March 2021.

## COUNT I
## UNLAWFUL DISCRIMINATION IN VIOLATION OF 29 USC § 1983

68.     Plaintiff readopts and re-alleges the allegations set forth in the foregoing paragraphs as if fully set forth herein, and further alleges:

69.     Plaintiff was subjected to discriminatory employment practices, including actions to terminate his employment because of his race, being black and an African American.

70.     Defendant used Plaintiff's race as an African American and as a Negro as a factor to exclude him from being considered for the City Manager position and the Acting City Manager position.

71.     Defendant's actions were discriminatory, and Defendant also used Plaintiff's race in the decision to terminate and to demote him under false pretenses.

72.     Defendant's reasons for termination and/or demotion of Plaintiff's employment were a pretext for unlawful discriminatory actions taken against him.

73.     The new Acting City Manager that replaced Plaintiff, Mr. Peters, is an older white male, who has no previous experience as a City Manager, a Deputy or an Assistant City Manager.  Also, no Commissioner has ever asked for a review of Peter's background, personnel file, or qualifications.

74.     Meanwhile, Plaintiff had zero negative performance evaluations, complaints, nor did he have any disciplinary actions against him which justified his demotion and termination as acting City Manager.

75.     If the Commission bothered to review, they would have seen the opposite of Peters, who had previously been terminated from another city's employment.

76.    On November 20, 2020 Plaintiff took the day off, but at 11:00am, he received a telephone call from the Newly Elected Commissioner, Dana McCool, crying on the phone to tell Plaintiff how much she appreciated him and his work, and how she was hurt by her vote, and she had lost sleep over the vote.  She stated that she knows that Plaintiff is in fact qualified and was doing a good job as acting City Manager, but the others in power somehow used her to terminate him.

77.    The Commission meetings of November 16th and November 20th clearly demonstrate the fact that several Commissioners, in cooperation with City Attorney Fowler, conspired to replace Plaintiff for no other reason other than his race.  All individuals involved  violated the City Charter in actions that they took, never bothering to respond to Plaintiff's appeal, which is prescribed by the charter and Florida law.

78.    The stated reasons for terminating Plaintiff's employment and for demotion were false, fraudulent, willful, intentional, and a pretext for unlawful discriminatory factors and motivations.

79.    Defendant violated 42 USC § 1983 by refusing and failing to provide him equal employment opportunities for the City Manager positions, and by treating him differently in employment decisions, including opportunities for

promotion and decisions of demotion and termination, all because of his race and status as a black person and African American.

80.     Plaintiff was demoted to the Deputy City Manager position because of his race, and plaintiff suffered adverse employment actions.

81.     As a direct result of Defendant's unlawful, discriminatory actions against Plaintiff, he has suffered: loss of income, humiliation, embarrassment, harm to his reputation, and mental anguish.

82.     Defendant's harassment and retaliatory actions to prevent plaintiff from effectively performing his job and removal of his authority and discretion were adverse employment actions, and tantamount to a constructive termination of his employment.

## COUNT II  UNLAWFUL RETALIATION IN VIOLATION OF 29 USC § 1983

83. Plaintiff readopts and re-alleges the allegations set forth in paragraphs 1-67 as if fully set forth herein, and further alleges.

84. Plaintiff engaged in protected activity, and complained that he was not being properly considered for the role of City Manager because of his race.

85. After Plaintiff was allegedly voted out from being the City Manager and Peters was voted in and offered the position, Plaintiff was subjected to harassment and actions to impair and effectively undermine Plaintiff's ability to perform his job as the Deputy City Manager.

86. Peters then got with the City Council to hire another friend/acquaintance of Peters to take over job duties and responsibilities of Plaintiff as the deputy city manager, specifically the code enforcement.

87. Integral functions of the Deputy City Manager were to oversee the code enforcement division, building services and building inspections.

88. Simultaneously, Peters told Plaintiff he was going to be demoted from Deputy City Manager to a customer service manager position in a call center of the water department.

89. The City Mayor, along with Peters, the Mayor and Vice Mayor, and certain Commissioners all conspired to take retaliatory actions to justify termination of Plaintiff's employment or to coerce him sufficiently to resign from his employment with the City by demoting him, stripping away his authority and responsibilities and by taking adverse employment actions against him.

90. Defendant retaliated against Plaintiff in violation of 42 USC § 1983 for his complaints and protected activity by taking away his job duties and responsibilities, demoting him, and taking actions to interfere with and prevent the ability for Plaintiff to perform the job duties and responsibilities of the Deputy City Manager.

91. Defendant acted with malicious intentions and harm, motivated by their desire to rid themselves of Plaintiff and perhaps all African Americans in leadership positions, and their motiations and intentions to retaliation against Palintiff for his complaints of racial discrimination and unalwful employment practices.

92. Plaintiff suffered adverse employment actions.

93. As a direct result of Defendant's unlawful, discriminatory and retaliatory actions against Plaintiff, including numerous adverse employment actions taken against him, Plaintiff  has suffered: loss of income, humiliation, embarrassment, harm to his reputation, and mental anguish.

94. Defendant's harassment and retaliatory actions to prevent plaintiff from effectively performing his job and removal of his authority and discretion

were adverse employment actions, and tantamount to a constructive termination of his employment..

## **PRAYER FOR RELIEF**

**WHEREFORE** Plaintiff prays for an award and judgment against the Defendant as follow:

a.   A ruling that Defendant violated 42 USC Section 1983;

b.  An award of all compensatory damages available including: back pay in lieu of reinstatement, front pay, damages for all pain and suffering, harm to reputation, mental anguish, humiliation and embarrassment.

c.  Pre-judgment interest;

d.  An order or judgment awarding reasonable attorneys' fees and costs and expenses of this litigation;

e.  That the Court find that Defendant acted willfully, intentionally and with reckless disregard for Plaintiff's rights and award Punitive damages; and

f.  That the Court award any other legal and equitable relief as this Court may deem fair and appropriate.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff

demands a trial by jury on all questions of fact raised by this Complaint.

Dated October 27, 2021.

*/s/ Mitchell L. Feldman, Esq.*
MITCHELL L. FELDMAN,
ESQUIRE
Florida bar No.: 0080349
**FELDMAN LEGAL GROUP**
6916 W. Linebaugh Ave #101
Tampa, FL 33625
Tele: (813) 639-9366
Fax: (813) 639-9376
mfeldman@flandgatrialattorneys.com
Attorney for the Plaintiff